EVA BATES BRIGGS,

         Plaintiff,

   v.

DELTA AIR LINES, INC.,

         Defendant.

Case No. 17-14124
Hon. Terrence G. Berg

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

Plaintiff, Eva Bates Briggs, is a Michigan or Texas resident who worked as a Flight Attendant for Defendant, Delta Air Lines, Inc., and was stationed in Romulus, Michigan from May 1, 2009 until November 25, 2014, when she was terminated. Briggs originally brought this suit in state court under Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") claiming that Delta "did not want to make reasonable accommodations as required by the Disabilities Act. Thus, when Plaintiff … informed Delta that she was medically able and willing to return to work, Delta terminated her, asserting that she had abandoned her job." Dkt. 1-2, PageID.16. Plaintiff contends that Defendant regarded her as disabled, and

discriminated against her when it rejected the appeal of her termination. Defendant removed the case to this Court under diversity jurisdiction. Dkt. 1.

Defendant is Delta Air Lines Inc., a foreign corporation (headquartered in Georgia and Delaware) that does substantial business in Michigan, employing several hundred employees and maintaining aircraft and administrative offices in Wayne County. Delta answers that Plaintiff is not "a person with a disability as defined in the PWDCRA." Defendant's Answer, Dkt. 6, PageID.47. Delta says that plaintiff was terminated because she "did not follow the required process for seeking to return to work." Dkt. 6, PageID.50. Delta has now moved for summary judgment (Dkt. 12), alleging that plaintiff has failed to establish a prima facie case of "regarded as disabled" discrimination, and has not shown that their proffered reason for denying her appeal was pretextual.

For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

## II. Background

Plaintiff Eva Bates Briggs began working as a flight attendant for Northwest Airlines in 1996. Briggs Deposition, Dkt.12-2, PageID.128. When Northwest Airlines merged with Delta Air Lines in 2008, Ms. Briggs become an employee of the defendant, Delta Air Lines. *Id.* at 128–29.

### a. Ms. Briggs takes paid leave

Ms. Briggs was on approved leave under the Family Medical Leave Act (FMLA) for most of 2010 and 2011. *Id.* at 131–32. Because she was returning from a long period of leave, Ms. Briggs was required to complete certain re-certification trainings before she could return to flight attendant duties. *Id.* at 127–28. She attended a training called "RQ2" in August 2012. *Id.* It turned out that she was supposed to complete RQ3, not RQ2, so Ms. Briggs waited for her RQ3 training to be scheduled. *Id.* During this waiting period, Ms. Briggs developed a medical condition that resulted in her seeking medical leave. *Id.* at 127, 130.

When an employee goes on this type of leave, Delta engages a third-party leave administrator called Sedgwick to collect documentation related to the leave and handle communications with the employee. Brimberry Deposition, Dkt. 12-8, PageID.210. Once an employee goes on leave, Sedgwick communicates with the employee about how long they need to be on leave, gathers medical documentation of any condition necessitating the leave, and eventually clears the employee to return to work for Delta. *See* Briggs Deposition, Dkt. 12-2, PageID.132–34, 141–42; Motion for Summary Judgment, Dkt. 12, PageID.92.

Ms. Briggs was on short-term disability leave until December 15, 2012. Briggs Deposition, Dkt. 12-2, PageID.134–35, 137; Dec. 3,

2012 Sedgwick Letter, Dkt. 13-1. This leave was later extended to January 31, 2013. Briggs Deposition, Dkt. 12-2, PageID.138–39. Sedgwick denied a request to extend Ms. Briggs' short term disability leave effective February 1, 2013. *Id.* at 141.

### b. *Ms. Briggs goes on unpaid leave*

In March or April 2013, Ms. Briggs applied for "unpaid medical leave of absence" ("UMLOA"), which was available per Delta's policies. Briggs Deposition, Dkt. 12-2, PageID.147–50. Sedgwick approved Ms. Briggs' request for UMLOA from February 1, 2013 to March 6, 2013, and then also approved a request to extend her UMLOA from March 7, 2013 to May 16, 2013. PageID.254; Briggs Deposition, Dkt. 12-2, PageID.155; *see also* Roger's Report, Dkt. 12-7, PageID.204. Ms. Briggs did not request another extension of her UMLOA, and her UMLOA ended on May 16, 2013.

After May 16, 2013, Ms. Briggs was neither on approved leave nor returned to normal employment status with Delta. On September 5, 2013, Kevin Anderson, then-Delta Field Service Manager for In-Flight Service at Detroit Metropolitan Wayne County Airport ("DTW," where Ms. Briggs was stationed), sent a "Job Abandonment Notice" to Ms. Briggs. Briggs Deposition, Dkt. 12-2, PageID.150; Sep. 5, 2013 Delta Notice, Dkt.13-7, PageID.241. This notice informed Ms. Briggs that Delta had tried repeatedly to con-

tact her regarding her status with the company, but had been una-
ble to reach her. *Id.*; Briggs Deposition, Dkt. 12-2, PageID.150. Ms.
Briggs understood this letter to mean that if she did not get in touch
with Delta right away, she may be terminated from her employ-
ment with Delta. *Id.* at PageID.150–51.

On September 10, 2013, Ms. Briggs' sister sent a letter on her
behalf, informing Delta that Ms. Briggs was debilitated by her dis-
ease, her cell phone service had been turned off, and she was unable
to respond. Briggs Deposition, Dkt. 12-2, PageID.150–51; Sep. 10,
2013 Sister Letter, Dkt.13-8, PageID.243. Ms. Briggs' sister in-
formed Delta that the best way to contact Ms. Briggs was through
regular mail. *Id.*

On January 8, 2014, Chun Qian, then-Delta Field Service Man-
ager for In-Flight Service, sent Ms. Briggs a second Job Abandon-
ment Notice. Briggs Deposition, Dkt. 12-2, PageID.153, 166; Jan. 8,
2014 Qian Letter, Dkt.13-9, PageID.245. Mr. Qian detailed in his
letter multiple failed attempts by him and other Delta managers to
contact Ms. Briggs, and urged her to contact him immediately. *Id.*

On January 15, 2014, Mr. Qian sent a second Job Abandonment
Notice to Ms. Briggs. Briggs Deposition, Dkt. 12-2, PageID.154;
Jan. 15, 2014 Qian Letter, Dkt.13-11, PageID.252. Mr. Qian also
called Ms. Briggs' mother, and gave her his cell phone number with
instructions for Ms. Briggs to call him right away. Qian Deposition,

Dkt.13-10, PageID.249–50. Ms. Briggs subsequently contacted Mr. Qian, and he "helped [her] do what [she] needed to do to keep from getting terminated at that point," namely, contact Sedgwick and supply medical documentation showing her need for continued UM-LOA. Briggs Deposition, Dkt. 12-2, PageID.167–68.

On May 19, 2014, Sedgwick informed Ms. Briggs via letter that she was retroactively approved for an extension of UMLOA from February 1, 2013 to July 31, 2014. Briggs Deposition, Dkt.12-2, PageID.155–56; May 19, 2014 Sedgwick Letter, Dkt. 13-12. In this same letter, Sedgwick informed Ms. Briggs that if she was unable to return to work by July 31, 2014 she could apply to extend her UMLOA until February 1, 2015. *Id.* Sedgwick also informed Ms. Briggs that "[y]ou are required to report any change in your medical condition immediately to Sedgwick CMS." *Id.* On July 31, 2014, Ms. Briggs' UMLOA ended, and she had not contacted Sedgwick to extend her UMLOA or to indicate she was ready to return to work. Briggs Deposition, Dkt. 12-2, PageID.168, 156, 157.

### c. *Ms. Briggs is terminated*

On August 8, 2014—after her UMLOA had already expired—Ms. Briggs texted Mr. Qian on his personal phone, saying:

> Hi this is Eva Bates. I just got a new phone. I have a doctor's appointment on the 12th and hopefully I will be free to return to work. I am doing better every month.

> Thanks for being such a helpful and supportive man-
> ager. I can't tell you how much it has meant to me. I look
> forward to talking with you soon.

Text Message Exchange, Dkt. 13-13, PageID.256. Mr. Qian re-sponded "I am so glad to hear that. Can['t] wait to hear your voice and see you in person :)" *Id*. Ms. Briggs did not inform Sedgwick or anyone else besides Mr. Qian about her August 12th appointment. Briggs Deposition, Dkt. 12-2, PageID.158. Her medical record from that appointment does not specifically note that she has clearance to return to work, or that she has requested the doctor get in touch with Sedgwick about her return to work. Medical Record 8/12/14, Dkt.13-14.

On August 19, 2014, Ms. Briggs called Mr. Qian's personal phone. She claims that during that phone call she informed Mr. Qian that she had received medical clearance to return to work, and that she thought he was going to handle arranging her return to work. Briggs Deposition, Dkt. 12-2, PageID.159, 169, 172. Mr. Qian testified that he does not specifically recall this conversation, nor does he recall Ms. Briggs informing him that she had been cleared to return to work. Qian Deposition, Dkt.13-10, PageID.248. Mr. Qian testified that he does not recall giving Ms. Briggs any instruc-tions at all, but says "[t]he first thing I would need is a clear back

to work paperwork from Sedgwick indicating that she's ready to return to work which needs to start[sic], without that I can't do anything." *Id*. at PageID.249. Ms. Briggs testifies also that she does not recall Mr. Qian specifically telling her he would handle her return, but only that she expected him to do so based on his actions in January and February of that year. Briggs Deposition, Dkt. 12-2, PageID.12-2 ("Again, I don't remember the specifics of the conversation. I remember we exchanged, you know, pleasantries, talked a little bit about my daughter—because she was, you know, making some noise—talked about Texas a little bit, and that, you know—you know, he let me know that he would get—get back with me or contact me later…And in the past—like I said, I relied on the past to determine, you know, what I did.").

After speaking with Mr. Qian on the phone, Ms. Briggs did nothing further.  She waited to hear from Delta. Briggs Deposition, Dkt. 12-2, PageID.160. She did not attempt to contact Mr. Qian or anyone else at Delta for over three months. *Id*. at PageID.160, 162, 166–67.

On November 6, 2014, Christian Gunn, then-Delta In-Flight Service Field Service Manager sent Ms. Briggs a job abandonment letter[1] informing that he had attempted to contact her several times,

---

[1] Mr. Gunn attested that he confirmed the letter had been delivered. Gunn Declaration, Dkt. 13-16, PageID.269.

and saying that if she did not contact him immediately, he would have to assume she no longer wanted to work for Delta. Nov. 6, 2014 Delta Letter, Dkt.13-15, PageID.265; Gunn Declaration, Dkt. 13-16, PageID.268–69. When Ms. Briggs failed to respond to that letter, Mr. Gunn, per Delta's job abandonment protocol, sent a memo to the In-Flight Service Base Director, Bruce Chilumuna recommending that Ms. Briggs be terminated from her employment with Delta. Gunn Delta Memo, Dkt. 13-18, PageID.274; Job Abandonment Checklist, Dkt. 13-17, PageID.272. On November 13, 2014, a Delta Human Resources Manager sent a memo to the Human Resources General Manager recommending that Ms. Briggs' employment be terminated because Ms. Briggs "has been on an unexcused leave of absence since August 1, 2014, … failed to obtain certification for her absence, … failed to return to work," and did not respond to multiple attempts to contact her. Nov. 13, 2014 Delta HR Memo, Dkt.13-19, PageID.277.

Delta terminated Ms. Briggs' employment on November 25, 2014, and sent a letter saying as much to Ms. Briggs' addresses on file. Gunn Declaration, Dkt.13-16, PageID.269. This letter also informed Ms. Briggs that she could appeal the decision, and suggested that she go through the Delta Conflict Resolution Process or contact the Equal Opportunity and Compliance Office. *Id*; Termination Letter, Dkt. 13-20, PageID.279.

On December 4, 2014, Ms. Briggs called Mr. Gunn, and he informed her that she had been terminated, and that she could appeal that decision. Briggs Deposition, Dkt. 12-2, PageID.160, 166; Gunn Declaration, Dkt. 13-16, PageID.269–70. Ms. Briggs testified that she did not "remember the entire conversation" with Mr. Gunn, and that she did not remember telling Mr. Gunn that she had told Mr. Qian in August that she was ready to return to work. Briggs Deposition, Dkt. 12-2, PageID.166.

A year and a half later, on August 22, 2016, Ms. Briggs sent a letter to the Delta Equal Opportunity and Compliance Department appealing her termination, and seeking either reinstatement or for her status to be changed to "retired." Briggs Deposition, Dkt. 12-2, PageID.160–61; Appeal Letter, Dkt. 13-21, PageID.282–83.

Notably, Ms. Briggs does not allege that any of the actions of Delta or its employees up to this point were discriminatory or illegal. Her claim regards entirely the disposition of her appeal of her termination.[2]

### d. The Appeal

Delta assigned James Brimberry to review Ms. Briggs' appeal. Brimberry Deposition, Dkt. 12-8, PageID.206–07. Brimberry explained that, when reviewing an appeal, he is looking for "whether

---

[2] During oral argument, the Court questioned Plaintiff's counsel as to whether she was waiving any claim of discrimination relating to the termination and he confirmed that the claim relates only to the appeal process.

or not the termination was appropriate at the time the decision was made to terminate and if there's any new information that was…not known at the time that was presented that would…warrant overturning [the decision to terminate]." *Id*. at 210–11.

Mr. Brimberry began his review on September 27, 2016 by attempting to contact Ms. Briggs using two different phone numbers over several days. Brimberry Chronology, Dkt. 16-2, PageID.343. He could not reach Plaintiff at either the phone number in the Delta system or the phone number Ms. Briggs listed in her appeal letter, and she did not call him back.   Mr. Brimberry then sent a letter to the address Ms. Briggs listed on her appeal letter. *Id*. On October 10, 2016, Mr. Brimberry spoke to Ms. Briggs on the phone. Dkt. 16-2, PageID.343–44. In this conversation, Ms. Briggs said that she waited so long to file the appeal, because "she had been "down" because of her termination[.]" *Id*. at 343. Mr. Brimberry noted that Ms. Briggs also claimed to be unaware of the Conflict Resolution Process, saying that "no one communicated anything about the process to her." *Id*. at 344. Mr. Brimberry explained to her that at this point in time, the Conflict Resolution Process was no longer available to her. *Id*.

Ms. Briggs told Mr. Brimberry that she understood from the May 19, 2014 Sedgwick letter that she had until February 1, 2015 to return to Delta. *Id*. at 344. Ms. Briggs informed Mr. Brimberry that

her contacts with Mr. Qian and several attempts to call the Delta In-Flight phone number were "evidence that she was attempting to contact the company to let them know that she was taking steps to return to work." *Id*. at 344. Ms. Briggs informed Mr. Brimberry that she moved to Texas in June 2014, and that Mr. Gunn sent the November 6th letter to her old address in Michigan. *Id*. Ms. Briggs claims that "she contacted the Employee Service Center in 2014 to update her telephone number and new address." Id. Ms. Briggs explained that she only received the job abandonment letters because a neighbor forwarded them to her. *Id*. at 345.

During the last half of October 2016, Mr. Brimberry received emails from Ms. Briggs with a copy of the Sedgwick letter from May, and a screenshot of the text messages between her and Mr. Qian in August 2014. *Id*. at 345. Mr. Brimberry also spoke with a person named Beverly Hill who stated, according to Brimberry's report, that "she checked the HR records repository and Ms. Bates-Briggs has not sent in an address change. Beverly spoke with the ESC[3] and on June 8, 2016, the employee spoke with the ESC and had them update her address to the TX address. The call previous to that one was in 2012, where she asked about benefits." *Id*.  Mr. Brimberry also spoke with Mr. Gunn, another person with the title

---

[3] The parties do not define what "ESC" stands for, but based on the context of its usage, it appears to be the entity with which Delta employees were expected to update their contact information as needed.

"SHRM Nimpson,"[4] and Mr. Qian. *Id*. Mr. Qian agreed to send Mr. Brimberry a summary of his text messages and contacts with Ms. Briggs. *Id*.

On October 21, 2016, Brian San Souci, a Manager in the Delta Equal Opportunity department, sent Ms. Briggs a letter informing her that her appeal was denied. Dkt. 13-23, PageID.287–88. The letter includes a timeline of events and an explanation of Delta's decision to deny her appeal, namely, "[b]ecause you were on an unauthorized absence effective August 1, 2014 and did not take steps to extend the UMLOA or appropriate steps to being the Return to Work (RTW) process, [… and b]ecause you did not respond to the Company's attempts to contact you, your employment was terminated[.]" *Id*. at 287. The letter also explains that "RTW [Return to Work] should have been initiated once your leave expired by contacting the phone numbers that Sedgwick outlined in their letters to you, and the RTW process is also published on Delta's employee extranet, to which you had access until you were suspended on November 6, 2014." *Id*. at 287–88. The letter explains all of the information received by Mr. Brimberry, and ultimately explains that Ms. Briggs' termination was appropriate. *Id*. at 287–88. Ms. Briggs subsequently filed the present action.

## III.   Standard of Review

---

[4] The parties do not include any explanation of the title "SHRM."

### a. Summary Judgment

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

As the moving party, the Defendant has the initial burden to show that there is an absence of evidence to support Plaintiff's case. *Selby v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552.

### b. Michigan Persons With Disabilities Civil Rights Act

The Michigan Persons With Disabilities Civil Rights Act ("PWD-CRA") prohibits an employer from terminating an employee because of her disability. MICH. COMP. LAWS § 37.1201(d)(1)(b); *see also Salim v. MGM Grand Detroit, L.L.C.*, 106 F. App'x 454, 458 (6th Cir. 2004). The PWDCRA also imposes a duty on employers to provide reasonable accommodations for an individual's disability if those accommodations will not create an undue hardship for the employer. *Id.* at § 37.1201(1)(g) (prohibiting discrimination "when adaptive devices or aids may be utilized thereby enabling that individual to perform the specific requirements of the job"); § 37.1210 (discussing burden of proof for a failure to accommodate claim); *see also Peden v. City of Detroit,* 470 Mich. 195 (Mich. 2004) ("[L]ike the ADA, the PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job.") (citing *Sanchez v. Lagoudakis,* 458 Mich. 704 (1998) (superceded by statute as stated in *Michalski v. Reuven Bar Levav*, 463 Mich. 723 (Mich. 2001)). The PWDCRA is substantially similar to the federal Americans with Disabilities Act, and courts take the same general approach to considering claims under each law. *Peden v. City of Detroit,* 470 Mich.

195 (Mich. 2004); *Salim v. MGM Grand Detroit, L.L.C.*, 106 F. App'x 454 (6th Cir. 2004).

### c. *"Regarded as" claims*

The PWDCRA protects people with a "determinable physical or mental characteristic that substantially limits one or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position." MICH. COMP. LAWS § 37.1103(d)(i). It also protects people who have a *history* of such a characteristic (§ 37.1103(d)(ii)), and people who are "*regarded as* having such a characteristic" (§ 37.1103(d)(iii) (emphasis added).

The purpose of the "regarded as" prong is to protect individuals "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities". *See* 29 C.F.R. § 1630.2(*l*); *School Bd. of Nassau Cty. v. Arline,* 480 U.S. 273, 284 (1987) ("By amending the definition of 'handicapped individual' to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment"); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 490 (1999), *overturned due to legislative action* (U.S. Pub. L. 110-

325 January 1, 2009)[5] ("An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity.").

In *Michalski v. Reuven Bar Levav*, the Michigan Supreme Court examined a "regarded as" disabled claim brought under the Handicappers' Civil Rights Act (the predecessor law to the PWDCRA), and determined that,

> in order to succeed … the plain language of the statute requires an employee prove (1) that the employee was regarded as having a determinable physical or mental characteristic, (2) that the perceived characteristic was regarded as substantially limiting one or more of the plaintiff's major life activities, and (3) that the perceived characteristic was regarded as being unrelated either to the plaintiff's ability to perform the duties of a particular job or position or to the plaintiff's qualifications for employment or promotion.

---

[5] U.S. Pub. L. 110-325 January 1, 2009 is the "ADA Amendments Act of 2008." That Act includes this amendment:

> (3) REGARDED AS HAVING SUCH AN IMPAIRMENT. —For purposes of paragraph (1)(C):
> (A) An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

ADA Amendments Act of 2008, PL 110–325, September 25, 2008, 122 Stat 3553. This change does not impact the instant case.

*Michalski v. Reuven Bar Levav*, 463 Mich. 723, 735 (Mich. 2001).

"Courts must evaluate the physical or mental characteristic at issue either (1) as it actually existed at the time of the plaintiff's employment, or (2) as it was perceived at the time of the plaintiff's employment." *Id.*

Therefore, in order to show a prima facie claim of discrimination in violation of the PWDCRA, Plaintiff must demonstrate:

(1) She is regarded as having a determinable physical or mental characteristic that substantially limits one or more of her major life activities, and is unrelated to her ability to perform the duties of a particular job or position;

(2) She is otherwise qualified to perform the essential functions of the position, with or without accommodation; and

(3) She suffered an adverse employment action because she was regarded as disabled.

*See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016) (ADA case). Once plaintiff makes out her prima facie case, the burden shifts to the defendant to "offer a legitimate explanation for its action." *Id.* (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996) (ADA case)). If the defendant does so, then the burden shifts back to the plaintiff, and she must "introduce evidence showing that the proffered explanation is pretextual." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996); *see*

*also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (burden shifting framework).

## IV. Analysis

Plaintiff's Complaint contains one allegation, that Delta Air Lines discriminated against her on the basis of her disability when it upheld on appeal her earlier termination. Plaintiff alleges that she meets the prima facie requirements of her claim because Mr. Brimberry regarded her as disabled, that she was otherwise qualified to perform the essential functions of the position, with or without accommodation, and that, because Mr. Brimberry regarded her as disabled, he ruled against her termination appeal. *See Michalski v. Reuven Bar Levav*, 463 Mich. 723 (Mich. 2001); *cf. Ferrari v. Ford Motor Co.*, 826 F.3d 885 (6th Cir. 2016). Plaintiff fails to present evidence to establish the first and third prong of her prima facie case requirements.

### a. Prong 1: "Regarded as disabled"

In support of the contention that Mr. Brimberry regarded her as disabled, Ms. Briggs alleges without support that (1) Mr. Brimberry was generally aware that she had been on a form of medical leave, and (2) because Mr. Brimberry had the letters that Sedgwick sent to her, he likely also had her medical records that were in Sedgwick's possession.

General awareness of an employee's having taken medical leave is not the same as knowledge of that employee's specific medical condition. Proof that Mr. Brimberry's knew of Ms. Briggs' medical leave does not establish that he regarded her as having a particular disabilty. *Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 368 (6th Cir. 2013) ("[A]n employee cannot be considered to have been fired 'on the basis of disability' unless the individual decision-maker who fired the individual had knowledge of that disability"); *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) ("A prima facie case is not made out if the decisionmaker is unaware of the specifics of an employee's disabilities or restrictions, even if the decisionmaker has a general knowledge that a disability exists."). Ms. Briggs points to no evidence in the record that Mr. Brimberry was actually aware of the nature of her specific medical condition, and Plaintiff's counsel did not ask Mr. Brimberry during his deposition whether he was.

During oral argument Plaintiff's counsel argued that because Mr. Brimberry had reviewed the letters sent by Sedgwick to Plaintiff, he must also have had access to their entire file. This amounts to guesswork that is not sufficient to create an issue of fact. The Court may not simply assume that because Mr. Brimberry was in possession of letters sent *from* Sedgwick *to* Ms. Briggs that he must also have her confidential, protected medical records that would

have outlined the specifics of her medical condition. Again, Ms. Briggs can point to no evidence in the record that Mr. Brimberry knew the name of her condition, let alone possessed her personal medical records, and her counsel did not ask Mr. Brimberry during his deposition whether he possessed such documents.

Because Ms. Briggs cannot establish facts that tend to show, even in the light most favorable to her, that Mr. Brimberry regarded her as disabled—or was even aware of her medical condition—she fails to meet the first requirement of her prima facie case.

### b. *Prong 2: "Otherwise qualified to perform"*

Plaintiff alleges that she meets the second prong of her prima facie case, because she is otherwise qualified to perform the essential functions of the position, with or without accommodation. Defendant does not contest this issue. Plaintiff meets the second prong of her prima facie test.

### c. *Prong 3: "Adverse employment action because of disability"*

Plaintiff alleges that she established the third prong of the prima facie requirements because the denial of her appeal was an adverse employment action taken against her because Mr. Brimberry regarded her as disabled. As discussed above, the record does not contain sufficient evidence regarding Mr. Brimberry's knowledge of Plaintiff's medical condition to create a genuine issue of fact as to

whether he regarded her as disabled. It likewise lacks evidence raising any issue of fact that Mr. Brimberry made his decision regarding her appeal *because* he regarded her as disabled. Because Ms. Briggs fails to present any evidence showing the requisite knowledge of Mr. Brimberry, Plaintiff fails to meet the third prong that the adverse employment action was taken because of Plaintiff's disability.

## V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. 12) is **GRANTED**.

**SO ORDERED.**

Dated: January 31, 2019    s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on January 31, 2019.

s/A. Chubb
Case Manager